I-,GASKINS, Judge.
The plaintiff, Thomas Roberson, appeals a trial court judgment granting an exception of prescription in favor of the defendant, Lincoln Parish Police Jury (LPPJ). For the following reasons, we affirm in part and reverse in part the trial court judgment and remand for further proceedings.
FACTS
On December 18, 2001, the plaintiff purchased a 16-acre tract of land from various members of his family. The land had been in the family for many years. Another 16-acre tract, owned by others, separated the plaintiffs property from an approximately 200-acre landfill operated by the defendant, LPPJ. The landfill was actively used to bury trash from the 1970s to 1993. Although no longer accepting refuse, the landfill incinerates construction materials and serves as a transfer point for moving garbage to other locations.
In the 1980s, the prior owners of the property raised the issue of damages caused by the landfill. Settlement negotiations commenced between the owners and LPPJ; no agreement was reached. A lawsuit was filed by the prior owners, but was not prosecuted to its conclusion.
On February 14, 2003, the plaintiff filed suit against LPPJ for damages and injunc-tive relief. He claimed that his property was downstream from the landfill which created a change in the natural drainage of the land, causing runoff water, silt, dirt, chemical constituents, and other debris to flow onto his land. The plaintiff asserted causes of action in trespass, nuisance, negligence, strict liability, condemnation, and he sought injunctive relief.
|2LPPJ answered, noting that the deed contained a clause whereby the plaintiff purchased the litigious rights of the sellers regarding damage claims affecting this property. LPPJ argued that the plaintiffs property is not contiguous to the landfill and that if there is water, silt, or dirt runoff, it is from property over which LPPJ has no control.
On December 17, 2003, LPPJ filed an exception of prescription claiming that in 1988, the plaintiffs relatives filed an almost identical lawsuit. LPPJ asserted that La. R.S. 9:5624 bars the plaintiffs claim against it. At the present time, that statute provides:
When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.[1]
LPPJ also filed a motion for summary judgment, claiming that La. R.S. 9:5624 precluded the plaintiffs claim because more than two years has passed since LPPJ completed and operated the landfill at issue.
*639 On May 5, 2004, the trial court filed a judgment granting LPPJ’s exception of prescription, dismissing the claims of the plaintiff. Because the court granted the exception of prescription, it ruled that the motion for summary judgment was moot.
lain its reasons for judgment, the trial court stated that the issue was whether the plaintiffs cause of action was subject to the two-year prescriptive period of La. R.S. 9:5624. The court found that the statute applies to this matter. The statute does not apply when the act causing the damage is not a necessary consequence or result of the public construction project. The trial court stated that the landfill was a public construction project which was completed, accepted, and began operation in the late 1970s. Because the landfill is on a hill higher than the plaintiffs property, the court found that runoff is a necessary consequence of its design and construction. The court observed that 15 years had passed between the initial damage and the filing of this lawsuit. Therefore, the court found that the claim had prescribed. It further held that the doctrine of continuing tort does not apply because the statute is controlling. The exception of prescription was granted and the ruling made the motion for summary judgment moot.
The plaintiff appealed, arguing that the trial court erred in finding that La. R.S. 9:5624 applies to this case and in finding that the damages complained of were the necessary consequence of the construction, use, and operation of the landfill.
APPLICATION OF LA. R.S. 9:5624
The purpose of La. R.S. 9:5624 is to limit the exposure of the state and its political subdivisions to liability in connection with a public work to a reasonable period. Avenal v. State, 2003-3521 (La.10/19/04), 886 So.2d 1085; Lyman v. Town of Sunset, 500 So.2d 390 (La.1987). Not every Rlawsuit for damages caused by a public entity or involving a public works project falls within the purview of La. R.S. 9:5624. In order to fall under the statute, the damage must be incurred “for public purposes.” Damage is incurred “for public purposes” when the damage is intentional or occurs as a necessary consequence of the public undertaking. Even unintentional damage can be inflicted for public purposes if it is a necessary consequence of the public project. Avenal v. State, supra. In most instances, resolution of the question of whether La. R.S. 9:5624 applies hinges on a determination regarding whether the damage is a “necessary consequence” of the public purpose. See Estate of Patout v. City of New Iberia, 1998-0961 (La.7/7/99), 738 So.2d 544.
The courts have considered several cases involving claims for damages to property arising from the operation of a landfill. In Estate of Patout v. City of New Iberia, supra, the defendant operated a landfill on property adjacent to the plaintiffs’ land. Trash was pushed over the property line onto the plaintiffs’ land. The court found that the inadvertent trespass caused by pushing the trash over the property line was not a necessary consequence of the operation of the landfill and therefore the trespass was not for public purposes. Accordingly, La. R.S. 9:5624 did not apply.
Lyman v. Town of Sunset, supra, dealt with a claim for diminution of the value of the plaintiffs’ property caused by a landfill operated by the defendant. That damage was found to be a necessary consequence of the public purpose, making La. R.S. 9:5624 applicable.
|5Similarly, in LeBlanc v. City of Lafayette, 558 So.2d 259 (La.App. 3d Cir.1990), the plaintiffs filed suit for damages arising from the operation of a landfill close to *640 their property, citing the nauseating odors, abundance of flies, loose trash scattered near the landfill, interference with natural drainage, and constant noise from the operation of heavy machinery. That case found that the pre-amendment version of La. R.S. 9:5624 applied and that the two-year prescriptive period had run, barring the plaintiffs’ property damage claim.
The plaintiff maintains that La. R.S. 9:5624 does not apply to this case. He argues that “trespassing silt and debris” onto neighboring land is not the necessary consequence of the operation'of the landfill. Rather, he claims that the runoff from the landfill is a result of its design and operation. He claims that the. runoff was not required simply because the landfill is on higher ground than his property. He contends that LPPJ is aware of the siltation problem, but has done nothing to remedy it.'
We affirm the trial judge’s finding that, as in Lyman, the damage' complained of was a necessary consequence of the operation of the landfill. Although the record provides little information regarding the operation of the landfill, it appears that cells of garbage were buried on the property which had a higher elevation than the plaintiffs land. Water running off the higher property onto the plaintiffs lower lying property, carrying with it silt and debris, is a natural and necessary consequence of the operation of the landfill.
| fiIt appears that the landfill began operation in the late 1970s. Under the current version of La. R.S. 9:5624, the plaintiff had two years from the completion and construction of the public project in which to assert his claim for damages. See Pracht v. City of Shreveport, 36,504 (La.App.2d Cir.10/30/02), 830 So.2d 546, writ denied, 2003-0007 (La.3/14/03), 839 So.2d 46. The plaintiff here argues that because the landfill is still being used for some purposes, it has not been “completed.” As stated in Pracht, the more logical interpretation of La. R.S. 9:5624 is that the statute provides a prescriptive period for those damages to private property caused during the construction of a public project. If we accepted the plaintiffs argument that the construction of this project continues throughout the years of use and operation of the landfill, then the prescriptive period for his claim would extend far beyond the time limits contemplated by La. R.S. 9:5624.
As specified by the statute, “any and all claims for damages” must be brbught within two years of the completion and acceptance of the ‘ public project. From the evidence before us it is difficult to determine when the cells were completed that led to the drainage problem. That portion of the plaintiffs suit seeking damages was filed at least' two years after the last garbage cell was filled and therefore, the damage claim arising from the runoff water, silt, dirt, chemical constitu’ents and other debris has clearly prescribed.
Even if the prior version of the statute applied, since the prescriptive period begins to run when the first occurrence of damage is actually sustained, the plaintiffs claim would still be prescribed. See Avenal v. |7 State, supra. The record shows that the problems complained of by the plaintiff manifested themselves by the 1980s, many years before the plaintiff acquired the property.
CONTINUING TORT
The plaintiff argues that the trial court erred in finding that the doctrine of continuing tort does not apply to this case. The plaintiff conceded that the doctrine does not apply to cases governed by La. R.S. 9:5624, but as stated above, he argues that the statute is not applicable here. *641 See Lyman v. Town of Sunset, supra; Avenal v. State, supra; Estate of Patout v. City of New Iberia, supra.
Because we find that the statute applies to the plaintiffs claim for damages, the doctrine of continuing tort does not apply to extend the prescriptive period for action on the damage claim.
INJUNCTIVE RELIEF
Even though we find that the plaintiffs claims for damages have prescribed, he also sought injunctive relief due to “an alteration in the natural drainage of the land.” We find that the claim for injunctive relief has not prescribed.
An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow. La. C.C. art. 655. The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome. La. C.C. art. 656. Neither contiguity not proximity of the two estates is necessary for the | existence of a predial servitude. It suffices that the two estates be so located as to allow one to derive some benefit from the charge on the other. La. C.C. art. 648. The prescription of nonuse does not run against natural servitudes. La. C.C. art. 758.
In Gaharan v. State Department of Transportation and Development, 579 So.2d 420 (La.1991), the state constructed a bridge over a creek, raising the roadbed of the highway by two and a half feet. Construction was completed in 1978 and the property flooded in 1982, 1988, and 1987. The plaintiff filed suit seeking damages and injunctive relief in 1988. The appellate court found that the claim for damages was prescribed under La. R.S. 9:5624. However, it also found that the claim for injunction for interference with drainage was not subject to prescription.
The supreme court affirmed the holding that the claim for injunctive relief had not prescribed. The court held that under La. C.C. art. 758, prescription does not run against natural servitudes. Therefore an action for injunctive relief to enforce a natural servitude does not prescribe. Gaharan v. State Department of Transportation and Development, supra. In Gaharan, the supreme court went on the state that, to the extent that Nuckolls v. Louisiana State Highway Department, 337 So.2d 313 (La.App. 2d Cir.1976), holds that actions for injunction against public bodies are prescribed under La. R.S. 9:5624, the case is overruled.
The supreme court noted in Gaharan that while injunctive relief is clearly the preferred remedy for the owner of an estate who is found to be due a servitude of drain, there may be exceptional circumstances which Itiwould make the granting of injunctive relief, an essentially equitable remedy, inappropriate or impermissible. In remanding the matter for further consideration, the court directed that if the trial court found that the state was obstructing the plaintiffs natural servitude, but compelling circumstances exist, the court may fashion a reasonable alternative remedy to mandating removal of the obstruction. The supreme court stated that compensatory damages would be a possibility. See also Dyer & Moody, Inc. v. Dynamic Constructors, Inc., 357 So.2d 615 (La.App. 1st Cir.1978); Eubanks v. Bayou D’Arbonne Lake Watershed District, supra. As a measure of the damages for this alternative, the supreme court suggested that the trial court not look to the damages caused by the flooding, but to the diminution in value of the property caused by the flooding.[2]
*642 In the present case, we find that the plaintiffs claim seeking injunctive relief has not prescribed. Therefore, we reverse that portion of the trial court judgment finding that all aspects of the plaintiffs claim have prescribed. We remand the matter to the trial court for consideration of the plaintiffs claim for injunctive relief.
CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment finding that the plaintiffs claim for damages has prescribed under the terms of La. R.S. 9:5624. We reverse that portion of the trial court | ¶ ¡judgment finding that the plaintiffs claim for injunctive relief has prescribed. We remand for consideration of this portion of the plaintiffs claim.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. At the time the landfill began operation, La. R.S. 9:5624 stated:
When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained. [Emphasis supplied.]
The current version provides that prescription begins to run after the completion and acceptance of the public worlcs. This language was added when the statute was amended by Acts 1987, No. 339 § 1. The jurisprudence holds that the amendment to the statute is not retroactive. See Eubanks v. Bayou D’Arbonne Lake Watershed District, 32,334 (La.App.2d Cir.9/22/99), 742 So.2d 113, writ denied, 99-3026 (La. 12/17/99), 751 So.2d 887. In arguments, the parties have applied the current version of the statute. As explained below, the result in this matter is the same regardless of which version of the statute is applied.

. We note that in Gaharan, it was the owner of the dominant estate seeking the injunction. In the present case, it is the owner of the servient estate seeking relief. La. C.C. arts. 655 and 656 gives the owner of the dominant estate a right to a natural servitude of drain. It also gives the owner of the servient estate a correlative right not to have his natural servitude made more burdensome. LPPJ's operation of the landfill on the dominant estate is the action in this case which has made the natural servitude more burdensome and is susceptible to injunction.